# CILENTI & COOPER, PLLC

### ATTORNEYS AT LAW

10 Grand Central
155 East 44th Street – 6th Floor
New York, New York 10017

————

Telephone (212) 209-3933
Facsimile (212) 209-7102

May 1, 2019

**BY ECF**

Hon. Cheryl L. Pollak, U.S.M.J
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> **Re:** ***Keshner v. C&C Enterprises of SI, LLC, et al.***
> ***Case No. 18-CV-2806 (CLP)***

Dear Judge Pollak,

We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter together with the defendants for the Court's assessment and approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously with this letter, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel, with the assistance of this Court at a March 1, 2019 settlement conference.

## I.    *The Need for the Court's Approval of the Agreement*

As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.,* No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

Hon. Cheryl L. Pollak, U.S.M.J.
May 1, 2019
Page 2

## II.    Plaintiff's Claims for Unpaid Wages

Defendants own and operate a restaurant in Staten Island.  Plaintiff alleges that she was hired by the defendants to work as a server, bartender, busser and porter in or about February 2016 and continued to work in those capacities until on or about April 23, 2018.

Plaintiff contends that the time between February 2016 and on or about April 14, 2016 constituted a training period, during which she worked three (3) days per week for approximately four (4) to five (5) hours per day.  Plaintiff claims that the defendants failed to pay her any wages whatsoever for the hours worked during this period. Defendants, meanwhile, dispute that plaintiff was employed during this period.  Instead, they maintain that she commenced her employment in April 2016 and, thus, is not entitled to any potential damages for those six (6) weeks.

Thereafter, plaintiff alleges that she typically worked five (5) days per week and, although her work shift fluctuated slightly each week, she normally worked the following number of hours:

- April 15, 2016 – April 16, 2017: 50.5 hours/week (but often in excess of 60);
- April 17, 2017 – March 5, 2018: 44 hours/week
- March 6, 2018 – April 23, 2018: 18-27 hours/week

Defendants dispute that plaintiff worked the hours that she alleges.  According to the Defendants' time sheets, plaintiff normally worked between thirty (30) and forty (40) hours per week.  And, according to the defendants, during the few weeks during which plaintiff actually worked in excess of forty (40) hours the number of overtime hours was limited in most instances to three (3) or four (4) hours.  Meanwhile, plaintiff disputes the accuracy of the defendants' time records, and disputes even punching a time-clock until the end of her employment and, thus, does not believe the records pertain to her or were contemporaneously created.

With respect to her pay, plaintiff contends that she was paid as follows:

- February 2016 – April 14, 2016: $0 (training)
- April 15, 2016 – April 16, 2017: $25 per week, and $25 per shift (approximately $150-$175 in total)
- April 17, 2017 – January 14, 2018: $7.50 per hour for all hours
- January 15, 2018 – April 23, 2018: $8.65 per hour for all hours

As mentioned above, the defendants dispute that plaintiff was employed between February 2016 and mid-April 2016.  Defendants also contend that they were permitted to pay plaintiff at the "tip credit" minimum wage afforded to servers of $7.50 and $8.65 per

Hon. Cheryl L. Pollak, U.S.M.J.
May 1, 2019
Page 3

hour in 2017 and 2018, respectively. Thus, the defendants believe there is no minimum wage violation for those years.

Plaintiff, meanwhile, disputes that the defendants were permitted to pay her at the "tip credit" minimum wage because she alleges that she failed to receive proper notice under the labor laws. Defendants argue that they properly provided her with notice of the tip credit upon providing her with an employee handbook in April 2017. Although the handbook states that plaintiff's rate would be the "NYS minimum tip wage with no overtime," plaintiff does not believe that this satisfies the notice requirement, which is a firm one that courts have interpreted to require notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations. In addition, under the Labor Law regulations an employer may not take a tip credit unless the employer has given the employee written notice stating: (1) the amount of tip credit to be taken from the basic minimum hourly rate; and (2) that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate. Because the handbook did not state the statutory minimum wage in effect, plaintiff's hourly rate of pay, and the amount of tip credits taken, plaintiff does not believe that the "notice" provided to her was adequate.

Based on the allegations in the complaint, plaintiff calculated that she is owed approximately $30,000 in unpaid minimum wages, overtime compensation, and "spread of hours" premiums with an equal amount in liquidated damages. Together with statutory damages for the defendants' alleged failure to provide a wage notice and proper wage statements, the total value of plaintiff's claims amount to approximately $70,000, exclusive of attorneys' fees and interest.

Assuming that the defendants' wage and hour records were believed to be true and accurate, we calculated plaintiff's underlying damages at approximately $14,000, and total damages at slightly more than $30,000, exclusive of attorneys' fees and interest.

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $30,000 to resolve all of plaintiff's wage and hour claims against the defendants. The settlement is payable over twelve (12) installments commencing on May 1, 2019, or within ten (10) days after Court approval, whichever occurs last. We believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about plaintiff's claims.

Moreover, as discussed *infra*, one concern tending toward settlement was plaintiff's legitimate concern about the collectability of an unsatisfied judgment against the defendants. *See Cabrera v. Roselea Int's Services*, No. 10 Civ. 241, 2011 U.S. Dist. LEXIS 152268, at *12 (M.D. Fla. Dec. 30, 2011) (compromised settlement deemed reasonable in light of plaintiff's legitimate collectability concerns).

### III.    *The Agreement is Fair and Reasonable*

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012).

Hon. Cheryl L. Pollak, U.S.M.J.
May 1, 2019
Page 4

In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, supra*, 679 F.2d at 1354)).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions, as well as with the Court's assistance during a settlement conference on March 1, 2019. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Apr. 13, 2013); *see also In re Penthouse Executive Club Compensation Litig.*, No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

In light of the various disputes concerning plaintiff's claims, as discussed herein, this settlement should be approved. In addition to those disputes, as mentioned above, there is a significant concern regarding the defendants' ability to withstand a more substantial settlement or judgment. Defendants operate a small restaurant that has significant operating expenses, which it is barely able to meet on an ongoing basis. A more substantial settlement or judgment was likely to cause the defendants to seek bankruptcy or to cease operations.

## IV.  *Application for Attorneys' Fees*

Pursuant to this firm's retainer agreement with plaintiff, our firm seeks to retain one-third of the net settlement amount after the firm's costs of $600 (filing fee and service of process) are deducted. Therefore, plaintiff's counsel seeks $9,832 in fees, and $600 in costs for a total award of $10,432, which is less than the firm's lodestar. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiff's counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees over in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, many courts, including this Court, have recognized the "percentage of the fund" method as an appropriate means by which to compensation plaintiff's attorneys in FLSA settlements. *See Yunda v. SAFI-G, Inc.*, No. 15 Civ. 8861 (HBP), 2017 U.S. Dist. LEXIS 65088 (S.D.N.Y. Apr. 28, 2017) (approving a percentage fee one-third of

settlement amount in FLSA settlement as "[c]ontingency fees of one-third in FLSA cases are routinely approved in this Circuit"); *Romero v. ABCZ Corp.*, 14 Civ. 3653 (HBP), 2017 U.S. Dist. LEXIS 90137 (S.D.N.Y. June 12, 2017) (same); *Aquino v. Fort Washington Auto Body Corp.*, No. 16 Civ. 390 (HBP), 2017 U.S. Dist. LEXIS 78344 (S.D.N.Y. May 23, 2017) (same); *Velasquez v. Little Mex. Wholesale, Inc.*, No. 15 Civ. 5818 (HBP), 2016 U.S. Dist. LEXIS 157210 (S.D.N.Y. Nov. 14, 2016) (same); *Garcia v. YSH Green Corp.*, No. 16 Civ. 532 (HBP), 2016 U.S. Dist. LEXIS 158001 (S.D.N.Y. Nov. 14, 2016) (same); *Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one-third of gross settlement).

For all of the reasons set forth above, the parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

We thank the Court for its continued attention to this matter.

Respectfully submitted,

Justin Cilenti

cc: Robert E. Brown, Esq. (by ECF)